IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IRAN THALASSEMIA SOCIETY, a nonprofit organization; EB HOME, a nonprofit organization; H.K., an individual; A.M., an individual; S.N., an individual; M.M., an individual; FZ.H., an individual; F.E., an individual; and NO CHILD SHOULD SUFFER, a nonprofit organization,

      Plaintiffs,

  v.

OFFICE OF FOREIGN ASSETS CONTROL; JANET YELLEN, in her official capacity as Secretary of the Treasury; and ANDREA GACKI, in her official capacity as Director of the Office of Foreign Assets Control,

      Defendants.

No. 3:22-cv-1195-HZ

OPINION & ORDER

Thomas H. Nelson
Thomas H. Nelson & Associates
20820 E. Glacier View Road
Zigzag, OR 97049

1 – OPINION & ORDER

Brandon Mayfield
The Law Office of Brandon Mayfield
14631 SW Millikan Way
Beaverton, OR 97003

    Attorneys for Plaintiff

Brian M. Boynton
Principal Deputy Assistant Attorney General
Alexander K. Haas
Director, Federal Programs Branch
Diane Kelleher
Assistant Director, Federal Programs Branch
Stephen M. Elliott
Stuart J. Robinson
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005

Natalie K. Wight
United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Ave., Ste 600
Portland, OR 97204

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

    This case concerns some of the unfortunate side effects that can result from foreign policy decisions of the political branches of our nation's government. Plaintiffs are an Iranian organization representing the interests of individuals in Iran suffering from thalassemia, a genetic blood disorder; an Iranian organization representing the interests of individuals in Iran suffering from epidermolysis bullosa ("EB"), a genetic skin disorder; six Iranian citizens suffering from EB; and an Oregon domestic nonprofit formed to support Iranian children impacted by the United States Government's sanctions on Iran. Plaintiffs claim that Defendants' imposition of

2 – OPINION & ORDER

"maximum pressure" sanctions on Iran has cut off the delivery of needed medication and medical supplies to children in Iran afflicted with thalassemia and EB, leading to increased suffering and, in some cases, death. Am. Compl. ¶¶ 2, 8, ECF 6. They seek a preliminary injunction enjoining Defendants from imposing sanctions on any entity that provides humanitarian aid in the form of medical supplies and medications to Iran. The Court held oral argument on the Motion on September 23, 2022. While the Court is sympathetic to the plight of the impacted children, any solution is beyond the Court's power to grant. The Court therefore denies Plaintiffs' Motion for Preliminary Injunction [2].

## BACKGROUND

In 2018, then-President Donald Trump reimposed certain economic sanctions with respect to Iran. Pl. Mem. 1-2, ECF 2-1; Def. Opp. 1, ECF 7. These sanctions, which Plaintiffs refer to as "maximum pressure" sanctions, imposed new restrictions on Iranian banking entities. Pl. Mem. 2-3; Def. Opp. 5-6. Defendant Office of Foreign Assets Control ("OFAC") administers the sanctions programs. Def. Opp. 2. Plaintiffs allege that these sanctions resulted in so-called secondary sanctions on non-Iranian banks seeking to do business with Iran, which has made it virtually impossible for entities wishing to provide humanitarian aid to Iran to do so. Pl. Mem. 3. Defendants counter that the sanctions do not prohibit humanitarian aid and that OFAC has developed mechanisms to facilitate aid. Def. Opp. 18-22. According to Defendants, third parties are choosing not to do business in Iran. *Id.* at 22-23.

Plaintiffs focus specifically on the impact of the secondary sanctions on Iranians with two medical conditions: thalassemia and epidermolysis bullosa ("EB"). According to Plaintiffs, "[t]halassemia major is a hereditary disease or disorder that causes anemia." Pl. Mem. Ex. 1 (Medical Report of Dr. Nourbakhsh) at 1, ECF 2-2. Individuals diagnosed with thalassemia

require blood transfusions, which in turn increase the iron load in the body. *Id.* They must regularly take iron-releasing drugs, or "iron chelators," to counteract this effect. *Id.* Without these drugs, individuals with thalassemia may suffer from heart or liver failure resulting in death. *Id.* at 3. Plaintiffs allege that Desferal, the most effective iron-chelating drug, is no longer available in Iran due to the sanctions. Pl. Mem. 3. Desferal is manufactured by Novartis, a Swiss-American pharmaceutical company. *Id.* Plaintiffs allege that Desfonac, the Iranian version of the drug, is less effective and causes several serious side effects. Am. Compl. ¶ 9. Plaintiffs allege that approximately 617 individuals with thalassemia in Iran have died since May 2018 because they were unable to access Desferal. *Id.*

EB is a recessive genetic skin disorder that results in painful blisters forming on the skin. Pl. Mem. Ex. 3A (Parvizi Decl.) ¶ 6, ECF 2-3. Those diagnosed with EB require "daily wound care, bandaging, and pain management." *Id.* Wounds may cover the majority of the individual's body. *Id.* ¶ 10. Plaintiffs allege that the "maximum pressure" sanctions led a Swedish entity, Mölnlycke Health Care, to cease providing Mepilex, a specialized wound dressing, to Iranian buyers. Pl. Mem. 3; Pl. Mem. Ex. 4, ECF 2-3 (letter to Plaintiff EB Home from Kristin Hedlund, Executive Vice President, stating that Mölnlycke Health Care is currently not doing business related to Iran due to the sanctions). Without the dressings, EB patients "are suffering excruciating pain as their wound dressings are changed." Pl. Mem. 3. Plaintiffs represent that other wound dressings are not acceptable substitutes. Pl. Mem. Ex. 3A ¶¶ 11-12.

Based on these harms, Plaintiffs filed a complaint against OFAC; its director, Andrea Gacki; and Treasury Secretary Janet Yellen. Plaintiffs allege two causes of action. Count I alleges violations of provisions of three federal statutes governing the President's authority to impose economic sanctions: the International Emergency Economic Powers Act ("IEEPA"),

specifically 50 U.S.C. § 1702(b)(2)[1]; the Trade Sanctions Reform and Export Enhancement Act ("TSREEA"), specifically 22 U.S.C. § 7202; and the Iran financial sector sanctions statute, specifically 22 U.S.C. § 8513a(d)(2). The provisions of these three statutes, Plaintiffs argue, prohibit the President from regulating or prohibiting humanitarian aid to Iran. Am. Compl. ¶¶ 45-54. Count II alleges negligence under the Alien Tort Claim Act, also known as the Alien Tort Statute ("ATS"), based on a breach of Defendants' duty toward Plaintiffs under the United Nations Convention on the Rights of the Child ("UNCRC"). *Id.* ¶¶ 55-63.

Plaintiffs seek an injunction that "prohibit[s] OFAC from imposing sanctions on any entity, including but not limited to producers and their financial intermediaries, that engage[s] in the provision of humanitarian medical supplies and drugs to Iran." Pl. Mem. 16. In the alternative, they seek "an injunction that would prohibit OFAC from imposing sanctions on any entity that provides or assists in providing medical treatments for thalassemia and epidermolysis bullosa." *Id.*

## STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id*. at 20. The third and fourth factors merge when the Government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[1] At oral argument, counsel for Plaintiffs clarified that Plaintiffs were not alleging a violation of IEEPA but rather the statute shows the importance of humanitarian aid.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in the plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the Court] need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation omitted).

The parties disagree on whether the heightened standard for mandatory injunctions applies in this case. Def. Opp. 9; Pl. Reply 2. A mandatory injunction is one that "orders a responsible party to take action." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotations omitted). It "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id.* (internal quotations omitted). A plaintiff seeking a mandatory injunction "must establish that the law and facts *clearly favor* [their] position." *Id.* (emphasis in original).

The Court finds that Plaintiffs seek a mandatory injunction in this case. In their complaint and memorandum in support of a preliminary injunction, Plaintiffs allege that Defendants are *currently* imposing sanctions on Iran in a manner that has effectively prevented entities that provide humanitarian aid to Iranian children suffering from thalassemia and EB from providing the needed medication and supplies. Am. Compl. ¶ 2; Pl. Mem. 1-2. Plaintiffs seek a preliminary

injunction requiring Defendants to change the manner in which the sanctions are imposed. Therefore, Plaintiffs must show that the law and facts clearly favor their position.

## DISCUSSION

Plaintiffs have not shown a likelihood of success on the merits, or serious questions going to the merits. Plaintiffs lack Article III standing, Plaintiffs have no enforceable rights under the federal statutes regulating the President's authority to impose economic sanctions, and Plaintiffs have no cause of action under the ATS. Accordingly, the Court denies Plaintiffs' motion for a preliminary injunction and declines to address the remaining *Winter* factors.

This decision illustrates that federal courts are courts of limited jurisdiction, and that some harms, even very serious harms, are beyond their power to redress. Defendants stated in their briefing and at oral argument that OFAC can and does provide guidance to individuals and entities seeking to navigate the sanctions and provide humanitarian aid in Iran. Def. Opp. 2. Today's decision does not mean that no resolution is possible, only that it beyond the Court's power to grant.

**I.      Article III Standing**

Article III of the Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must show three elements to establish standing. First is "an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted). Second, that injury must be "fairly traceable to the challenged action of the defendant," and not "the result of the independent action of some

third party not before the court." *Id.* (quotation marks and alternations omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (citations omitted).

Defendants argue that Plaintiffs have not established causation and redressability, and that the institutional Plaintiffs have further failed to establish an injury in fact. Def. Opp. 11-16. The Court concludes that the Iranian institutional Plaintiffs have established an injury in fact, but all Plaintiffs have failed to establish causation and redressability.

A. Injury in Fact for the Institutional Plaintiffs

Defendants argue that the three institutional Plaintiffs—Iran Thalassemia Society, EB Home, and No Child Should Suffer—lack organizational standing because they have failed to demonstrate an injury in fact.[2] Def. Opp. 14-16. "[A]n organization may establish injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [injurious behavior] in question." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019). In their reply, Plaintiffs Iran Thalassemia Society and EB Home allege that their missions of supporting individuals suffering from the respective diseases has been frustrated due to the sanctions. Pl. Reply 6-7. They allege that members have suffered and even died due to the unavailability of necessary medication and medical supplies. *Id.* They allege that they "had to scramble to find second-best solutions because OFAC sanctions removed the best treatment." *Id.* at 7. Younos Arab, the Secretary of the Thalassemia Society, states that the Society provides medicine to thalassemia patients and that currently there is no medicine available. Pl. Mem. Ex. 2A (Arab Decl.) ¶ 7. Plaintiff EB Home provided evidence that

---

[2] Defendants do not dispute that the individual plaintiffs can demonstrate an injury in fact.

8 – OPINION & ORDER

it has corresponded with Mölnlycke Health Care, a Swedish entity, in order to attempt to convince it to continue providing specialized dressings to EB patients in Iran. Pl. Reply 5 (citing to news article); Pl. Mem. Ex. 4, ECF 2-3 (letter from Mölnlycke Health Care). These allegations demonstrate that the organizations' missions have been frustrated and that they have diverted resources to combat the problem. They are sufficient to establish an injury in fact for the two Iranian institutional Plaintiffs.

With respect to Plaintiff No Child Should Suffer, however, Plaintiffs' Amended Complaint, Motion for Preliminary Injunction, and Reply provide insufficient factual allegations to establish standing. Beyond a single sentence in the Amended Complaint, almost nothing is said about this plaintiff. Am. Compl. ¶ 19 ("Plaintiff No Child Should Suffer is an Oregon domestic nonprofit corporation formed for the purpose of supporting Iranian children suffering as a result of OFAC's maximum pressure sanctions."). At oral argument, Plaintiffs did not even address No Child Should Suffer. Because Plaintiffs have failed to explain No Child Should Suffer's role in this lawsuit beyond making venue proper in Oregon, Am. Compl. ¶ 24, the Court finds that this plaintiff has failed to establish an injury in fact, or, indeed, any of the elements of Article III standing.

B.   Causation and Redressability

Defendants focus primarily on the causation and redressability elements of standing, arguing that Plaintiffs have not established those elements because relief hinges on the independent responses of third parties. Def. Opp. 11-14. "To plausibly allege that the injury was not the result of the *independent* action of some third party, the plaintiff must offer facts showing that the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation and quotation

9 – OPINION & ORDER

marks omitted). In *Novak v. United States*, the plaintiffs alleged that the cabotage provisions of the Jones Act allowed two companies (which were not party to the suit) "to establish a duopoly whereby they are able to dominate the Hawaii shipping market and charge exorbitant rates." 795 F.3d 1012, 1019 (9th Cir. 2015). The district court held that the plaintiffs failed to establish causation, as their own complaint acknowledged that the Hawaii shipping market had features that made it easy to keep prices high independent of the Jones Act. *Id.*

Similarly, redressability is not established where relief "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). To illustrate, in *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996), individuals and organizations challenged the constitutionality of the Violent Crime Control and Law Enforcement Act of 1994. The plaintiffs alleged that the Act caused a steep increase in the price of certain firearms, burdening their constitutional rights. *Id.* at 1130. The Ninth Circuit held that the plaintiffs failed to establish redressability because third-party gun manufacturers, not the government defendants, raised the price of firearms. *Id.*

Here, Plaintiffs allege that the "maximum pressure" sanctions on Iran's banking sector have led third parties to cease providing the needed medications and medical supplies to Iran because it is difficult for them to do business with Iranian banks. Am. Compl. ¶¶ 11, 37, 44; Pl. Mem. 2-3; Pl. Reply 7-8. Plaintiffs assert that the third parties' choices are not "unfettered" but rather the only realistic response to the sanctions. Pl. Reply 7-8. Defendants counter that third parties' risk-avoidance policies, including excessive compliance with the sanctions, are a major factor in the shortage of medical supplies. Def. Opp. 12-13. They further argue that OFAC

continues to permit such entities to provide humanitarian aid. *Id.* at 18.[3] In short, the parties agree that the sanctions have had a "chilling effect" on third parties' provision of aid but disagree on whether ordering a change in the sanctions would redress Plaintiffs' harms.

This case is a closer call than *Novak* or *San Diego County Gun Rights Committee*, but it ultimately falls within the same category. The Court cannot be confident that third party businesses would provide the required medical supplies to Iran if the "maximum pressure" sanctions were lifted. Many factors influence the decision of whether to do business in a particular country, and as Plaintiff acknowledges, the nation of Iran presents unique and changing circumstances for reasons other than the "maximum pressure" sanctions, even if the sanctions contributed to those changes. *See* Am. Compl. ¶ 36 (discussing the Iranian government's shift in global political positioning in the last year, which involves associating more closely with China and Russia). Ultimately, a redress of Plaintiffs' harms requires the cooperation of third parties not before this Court, and the Court cannot predict how they will respond. Plaintiffs lack standing in this matter.

**II.    No Private Right of Action for Count I**

Plaintiffs' first claim, as modified at oral argument, alleges that the "maximum pressure" sanctions violate provisions of two federal statutes governing the President's power to impose economic sanctions: the Trade Sanction Reform and Export Enhancement Act ("TSREEA"), specifically 22 U.S.C. § 7202; and the Iran financial sector sanctions statute, specifically 22 U.S.C. § 8513a(d)(2). Defendants argue that these statutes do not provide a private right of action. Def. Opp. 17-18. Plaintiffs respond that they do not need a right of action because the

---

[3] Defendants also assert that a delivery of the necessary thalassemia medication to Iran is in progress, Def. Opp. 14, which Plaintiffs refute, Pl. Reply 4.

11 – OPINION & ORDER

Court has inherent authority to issue equitable relief. Pl. Reply 8-9. The Court concludes that Plaintiffs lack a right of action here.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* In *Alexander*, the Supreme Court signaled that courts should hesitate before implying a private right of action. *See id.* at 287-89. If the text and structure of the statute do not indicate that Congress intended to create a private right of action, then the court should not imply one. *See id.* at 288-89. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id.* at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

The two statutes on which Plaintiffs rely do not indicate an intent to create a private right of action for a class of persons encompassing Plaintiffs. Nor does the Court possess inherent authority to grant the requested relief apart from any statutory basis. The Court addresses each argument in turn.

    A.    Statutes

The relevant section of TSREEA provides that, subject to certain exceptions, "the President may not impose a unilateral agricultural sanction or unilateral medical sanction against a foreign country or foreign entity" without submitting a report to Congress that Congress then approves. 22 U.S.C. § 7202. The language and structure of the statute indicate that its purpose is to protect Congress's role in the process when the President seeks to impose such unilateral sanctions. It focuses on the person regulated—the President—rather than a class of persons to be

protected. The interest protected is Congress's interest as one of the political branches of government. The statute does not indicate any congressional intent to create a private right of action, and it does not create or enforce a right to receive humanitarian aid.

The second statute Plaintiffs rely on for their first cause of action authorizes the President to impose sanctions on Iranian financial institutions. 22 U.S.C. § 8513a(d)(1). The relevant provision states: "The President may not impose sanctions under paragraph (1) with respect to any person for conducting or facilitating a transaction for the sale of agricultural commodities, food, medicine, or medical devices to Iran." *Id.* § 8513a(d)(2). The language of the statute restricts the President's actions with respect to the person who conducts or facilitates the transaction. The text and structure of this statute do not indicate that Congress intended to create a private right of action, as the statute focuses on restricting the scope of the President's authority rather than protecting a class of persons. Even if it did create a private right of action, that right would not apply to individuals seeking to receive aid. The statute does not create a right to receive aid.

In sum, the two federal sanctions statutes on which Plaintiffs rely for their first cause of action do not provide them with a right of action.

B.    Inherent Power

In their reply brief and at oral argument, Plaintiffs asserted that the Court has inherent authority to issue the requested injunction under its equitable powers. Pl. Reply 8-9. They cite two cases in support of this proposition. The first, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), in fact illustrates why the Court lacks authority to grant the relief sought. In *Armstrong*, providers of habilitation services to Medicaid recipients in Idaho sued two state officials in federal court for an alleged violation of § 30(A) of the Medicaid Act, seeking

injunctive relief. *Id.* at 323-24. The Supreme Court first rejected the Ninth Circuit's conclusion that the Supremacy Clause of the Constitution gave the providers an implied right of action. *Id.* at 324-25. It next rejected the providers' argument that the federal court's inherent equitable powers allowed it to issue the requested injunction, stating, "In our view the Medicaid Act implicitly precludes private enforcement of § 30(A), and respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." *Id.* at 328.

      Similarly, here the statutes on which Plaintiffs rely give no indication that they were intended to permit private enforcement. The Court has no evidence that Congress intended to permit prospective recipients of humanitarian aid abroad to enforce statutes governing the nation's diplomatic and economic policies. Plaintiffs cannot escape this conclusion by invoking the Court's general equitable powers.

      The other case Plaintiffs cite is *Harmon v. Brucker*, 355 U.S. 579, 580 (1958), which addresses several former members of the Army who received discharges other than "honorable" and challenged the Secretary of the Army's action in so discharging them as beyond his statutory authority. The Secretary did not dispute that the relevant statutes protected the plaintiffs' interests in their discharge status; rather, he argued that the congressionally-created Army Review Board was the exclusive mechanism for the plaintiffs to seek review of their discharge determinations and that the district court had no jurisdiction to review the findings of the administrative proceedings. *Id.* at 581. In a short *per curiam* opinion, the Supreme Court held that the district court had authority to (1) interpret the applicable statutes to determine if the Secretary had exceeded his authority, and (2) grant relief, i.e., order the Army to issue certificates of honorable discharge. *Id.* at 582. Plaintiffs rely on a single sentence from this case: "Generally, judicial relief is available to one who has been injured by an act of a government

official which is in excess of his express or implied powers." *Id.* at 582-83. This sentence must be read in context: the plaintiffs in *Harmon* challenged the Secretary's actions as exceeding his authority under a statute that protected the plaintiffs' interests in their discharge status. In contrast, the statutes on which Plaintiffs rely here do not create or protect a right to receive humanitarian aid. *Harmon* does not support Plaintiffs' argument that the Court may issue the requested injunction under its general equitable powers.

The Court concludes that it lacks authority to issue Plaintiffs' requested relief under Count I. Plaintiffs are not likely to succeed on Count I and do not raise serious questions on the merits on Count I.

### III. No Cause of Action Under ATS for Count II

Plaintiffs' second claim alleges negligence under the Alien Tort Statute ("ATS"). Defendants argue that the Court lacks jurisdiction to reach Plaintiffs' ATS claim because the Government has not waived sovereign immunity. Def. Opp. 24. Plaintiffs reply that section 702 of the APA provides the requisite waiver. Pl. Reply 13. APA § 702 is a broad waiver of sovereign immunity for suits in equity against a federal agency or federal officer acting in his or her official capacity, regardless of whether the suit itself is under the APA. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185-86 (D.C. Cir. 2006). As Defendant acknowledges, "The D.C. Circuit has indicated that ATS claims seeking non-monetary relief might proceed against the head of an Executive agency" under this waiver. Def. Opp. 24 n.9. Plaintiffs seek non-monetary relief against an agency and an agency head acting in her official capacity. The Court has jurisdiction over this matter.

Where this claim falls short is on the merits. To be actionable under the ATS, the tort alleged must be "committed in violation of the law of nations or a Treaty of the United States." 28 U.S.C. § 1350. Plaintiffs cite to the United Nations Convention on the Rights of the Child ("UNCRC") as the basis for the legal duty in their negligence claim. Am. Compl. ¶ 59. Plaintiffs acknowledge that the U.S. Senate has not ratified the UNCRC and thus it is not a "Treaty of the United States." *Id.* It is a basic principle of international law that "a State only becomes bound by—that is, becomes a party to—a treaty when it ratifies the treaty." *Avero Belgium Ins. v. Am. Airlines, Inc.*, 423 F.3d 73, 80 (2d Cir. 2005) (internal quotations omitted). "A treaty not ratified by the United States at the time of the alleged events cannot form a basis for an ATS claim." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 738 (9th Cir. 2008).

Plaintiffs attempt to overcome this impediment by arguing that because the vast majority of UN members have ratified the treaty, it has become the law of nations. Am. Compl. ¶ 60; Pl. Reply 13. This argument is creative but is foreclosed by precedent. First, as Defendants correctly observe, the mere fact that a treaty has many signatories does not convert it into the law of nations. *Abagninin*, 545 F.3d at 738-39. Second, the Supreme Court has prescribed a narrow interpretation of the law of nations actionable under the ATS that does not encompass Plaintiffs' claim. In *Sosa v. Alvarez-Machain*, the Supreme Court suggested that causes of action under the ATS are generally confined to three historical torts: "violation of safe conducts, infringement of the rights of ambassadors, and piracy." 542 U.S. 692, 724 (2004). Recently, in *Nestle USA, Inc. v. Doe*, the Supreme Court went a step further and concluded "that federal courts should not recognize private rights of action for violations of international law beyond the three historical torts identified in *Sosa*." 141 S. Ct. 1931, 1939 (2021). Plaintiffs do not allege any of the three historical torts, so their ATS claim cannot proceed as a violation of the law of nations.

16 – OPINION & ORDER

At oral argument, Plaintiffs suggested that their negligence claim might qualify as a claim for violation of safe conduct. Plaintiffs did not plead a violation of safe conduct in their complaint and did not provide analysis in their briefing or at oral argument. The Court briefly addresses the issue. A safe conduct is "1. A privilege granted by a belligerent allowing an enemy, a neutral, or some other person to travel within or through a designated area for a specified purpose. 2. A document conveying this privilege." *Black's Law Dictionary* (11th ed. 2019). In the understanding of the Framers of the Constitution, "a safe conduct signified a sovereign obligation on the part of the United States to prevent injury to the person or property of an alien within its territory and also abroad where it had a military presence." Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 873 (2006).

Plaintiffs' allegations do not state a claim for a violation of safe conduct. First, they do not allege that the United States is "a belligerent" with respect to Iran—that is, "[a] country involved in a war or other armed international conflict." *Black's Law Dictionary*. Rather, they allege that the United States has imposed excessively draconian economic sanctions on Iran. Am. Compl. ¶¶ 2, 6, 8. Second, Plaintiffs have not alleged that they—or their members in the case of the institutional Plaintiffs—have been given a formal privilege to travel that has not been respected. Any privilege that might exist here would be held by a party not before the Court: a person or entity that wishes to transport humanitarian aid to Iran and finds itself unable to do so because of the sanctions. With neither the facts nor the relevant party before the Court to support its recasting as a violation of safe conduct, Plaintiffs' claim must proceed as pled: a negligence claim, which the ATS cannot support.

Accordingly, Plaintiffs' ATS claim seeks relief it is beyond the Court's power to grant. The Constitution assigns the making and ratification of treaties to the Executive and the Senate,

17 – OPINION & ORDER

respectively. U.S. Const. art. II, § 2, cl. 2 (The President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur."). The Supreme Court has decided that it is for Congress, not the federal courts, to recognize new causes of action under the ATS for violations of the law of nations. Plaintiffs have failed to allege a violation of the law of nations or a treaty of the United States. Plaintiffs' Count II is not likely to succeed on the merits and does not raise serious questions about success on the merits.

In sum, Plaintiffs are not likely to succeed on the merits on either of their claims, nor do they raise serious questions about success on the merits. They have therefore failed to meet the high standard required to grant a preliminary injunction.

## CONCLUSION

The Court DENIES Plaintiff's Motion for a Preliminary Injunction [2].

IT IS SO ORDERED.

DATED:_October 14, 2022_.

_____
MARCO A. HERNÁNDEZ
United States District Judge